UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

03 FEB 26 PH 4: 1

U. . . . . . . . T
N.D OF ALABAMA

THEODORA R. GOGGINS,                )
                                    )
    Plaintiff,                      )
                                    )
vs.                                 )        Civil Action No. CV-02-S-3216-NE
                                    )
DILLARD's, INC., a corporation,     )        **ENTERED**
                                    )
    Defendant.                      )        FEB 2 6 2003

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

## MEMORANDUM OPINION

Plaintiff was first employed by defendant's corporate predecessor in 1983.  It is not clear from the evidentiary materials and briefs submitted to this court whether plaintiff's employment with defendant was ever terminated.  Nevertheless, the following facts are clear.  During August of 2001, plaintiff was working as a salesperson at defendant's "Dillard's" department store located in the "Madison Square Mall" in Huntsville, Alabama.  Around that same time, defendant instituted a compulsory arbitration program, pursuant to which all of its employees at the Madison Square Mall store were required to enter into an agreement with defendant.  The pertinent terms of that agreement required both defendant and its employees to submit certain types of disputes to arbitration, including claims of "[d]iscrimination or harassment on the basis of . . . race. . . . [and] [r]etaliation for. . . exercising your protected rights under any statute."[1]  Plaintiff was provided a copy of the arbitration rules.  She also attended a meeting of employees at which the arbitration rules were explained.  Following that meeting, plaintiff signed a form entitled "Acknowledgment of Receipt of Rules for Arbitration," which stated that "Employees are deemed to have agreed to the provisions of the Rules by virtue of accepting employment with the Company *and/or continuing employment*

---

[1] Defendant's motion to dismiss/compel arbitration, Tab 1 (Rules of Arbitration), at 1.



*therewith.*"[2]

Plaintiff subsequently filed this action on December 30, 2002, alleging that defendant discriminated against her because of her race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. This action now is before the court on defendant's "Motion to Dismiss, or in the Alternative, to Stay This Action & to Compel Arbitration" (doc. no. 4), and plaintiff's opposition to the same (doc. no. 5). Upon consideration of the pleadings, briefs, and evidentiary submissions, this court is of the opinion that defendant's motion is due to be denied.

## I. DISCUSSION

Plaintiff presents a plethora of arguments in her brief opposing defendant's motion. Upon close inspection of defendant's arbitration rules, however, this court concludes that plaintiff's claims should not be submitted to an arbitral forum for another reason entirely.

When considering whether plaintiff's claims should be submitted to arbitration, this court must balance the "liberal federal policy favoring arbitration agreements," *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983), against the important rights granted to plaintiff by federal civil rights statutes. While the Supreme Court recently held that employment discrimination claims may be subjected to mandatory arbitration, *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001), the Court previously had emphasized that arbitration of such claims can permissibly change only the forum for their adjudication — not the substantive rights conferred by statute.

> By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather

---

[2] *Id.*, Tab 2 (Acknowledgment of Receipt of Rules for Arbitration), at 1 (emphasis supplied).

than a judicial, forum.  It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration. . . .

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346, 3354, 87 L. Ed. 2d 444 (1985); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) ("'So long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function.'") (quoting *Mitsubishi*, 473 U.S. at 637, 105 S. Ct. at 3359) (additional internal brackets omitted).

Nothing in the *Circuit City* opinion casts doubt upon the continuing validity of the principle that, by requiring an applicant for employment (or an existing employee) to enter into an agreement providing for binding arbitration of federal statutory claims as a condition of employment (or continued employment), the employer must not compel the employee to "forgo the substantive rights afforded by the statute." *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 658 (6th Cir. 2003) ("The Supreme Court has made clear that statutory rights, such as those created by Title VII, may be subject to mandatory arbitration *only if the arbitral forum permits the effective vindication of those rights*.") (emphasis supplied).  Here, the court is of the opinion that the arbitral forum constructed by defendant does not permit effective vindication of plaintiff's Title VII rights.

Title VII provides for payment of the prevailing party's attorneys' fees.  *See* 42 U.S.C. § 2000e-5(k) ("In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs. . . .").  Despite the facially-neutral language of the statute, it is well-settled that the test for determining whether a prevailing Title VII plaintiff is entitled to an award of attorneys' fees is lower than the standard applied to prevailing Title VII defendants.  The degree of success required of a Title VII

plaintiff in order to recoup attorneys' fees has been summarized by two respected commentators as follows:

> The standard for determining "prevailing party" status under the civil rights statutes continues to be whether the plaintiff has succeeded, on any significant issue in the litigation, in achieving some benefit sought in bringing the suit, such that there has been a resolution of the dispute in a way that materially changes the legal relationship between the plaintiff and the defendant. Courts generally find that this standard has been met where the plaintiff has obtained either an award of greater than "nominal" damages or a judgment vindicating important personal or public constitutional or statutory rights.

Barbara Lindemann and Paul Grossman, *Employment Discrimination Law* 1274-75 (2002 Cumulative Supplement) (footnotes omitted).  In sharp contrast, a Title VII defendant may recover its attorneys' fees only "upon a finding that the plaintiff's action was frivolous, groundless, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christainburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421, 98 S. Ct. 694, 700, 54 L. Ed. 2d 648 (1978).

The rules of arbitration which defendant moves this court to impose upon plaintiff substantially curtail the circumstances under which she may recoup her attorneys' fees.  Under the heading "Participation in the Cost," defendant's arbitration rules provide that:

> If the arbitrator *rules totally in your favor* on a claim under which fees and costs can be granted under law, then the arbitrator has the same authority as a judge to award you reasonable attorney fees and other costs.  If the arbitrator finds against you, Dillard's may be awarded its reasonable attorneys' fees and other costs, if determined by the arbitrator to be appropriate.[3]

The requirement that the arbitrator rule "totally" in plaintiff's favor on her civil rights claim imposes a higher standard than the one applicable in a judicial forum, where a Title VII plaintiff may recoup her attorneys' fees even if she is only partially successful.  *See, e.g., Aubin v. Fudala*, 782 F.2d 287,

---

[3] Defendant's motion to dismiss/compel arbitration, Tab 1 (Rules of Arbitration), at 8 (emphasis supplied).

291 (1st Cir. 1986) ("[A] plaintiff should receive significant fees when he has won a *partial* victory on a civil rights claim while receiving substantially the relief he there sought . . . . '[V]ictory' in a civil rights suit is typically a practical, rather than a strictly legal matter. ") (emphasis in original); *Jones v. Kreisel Company, Inc.*, No. 90 Civ. 7412 (AGS), 1995 WL 681095, at *4 (S.D.N.Y. Nov. 16, 1995) (plaintiff who achieved only *partial* success on her Title VII claim was nevertheless entitled to recoup some of her attorneys' fees); *Corbett v. Wild West Enterprises, Inc.*, 713 F. Supp. 1360, 1363 (D. Nev. 1989) ("Plaintiff is a prevailing party having *partially* prevailed on her Title VII claim and is entitled to attorneys' fees.") (emphasis supplied) (citations omitted). *Cf. Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782, 791-92, 109 S. Ct. 1486, 1493, 103 L. Ed. 2d 866 (1989) (holding, in the context of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, that "[i]f the plaintiff has succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit[,] the plaintiff has crossed the threshold to a fee award of some kind").[4]

The court must determine, therefore, whether the rule providing for plaintiff's recovery of attorneys' fees only "[i]f the arbitrator rules *totally* in [her] favor" effectively prevents vindication of her federal statutory rights. *See Morrison,* 317 F.3d at 658 (citing, *e.g., Williams v. Cigna Financial Advisors, Inc.*, 197 F.3d 752, 763 (5th Cir. 1999) (observing that *Gilmer* "plainly indicates that an arbitral cost allocation scheme may not be used to prevent effective vindication of federal statutory claims")).

---

[4] This court also has lingering doubts as to whether the arbitration rule providing for defendant's recovery of attorneys' fees, "if determined by the arbitrator to be appropriate," sufficiently constrains the arbitrator to award a Title VII defendant its attorneys' fees only "upon a finding that the plaintiff's action was frivolous, groundless, unreasonable, or without foundation, even though not brought in subjective bad faith." *See Christainburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 421, 98 S. Ct. 694, 700, 54 L. Ed. 2d 648 (1978). The court need not parse this issue however, because the portion of the arbitration rules addressing the conditions under which a Title VII plaintiff may recover her attorneys' fees clearly sets the bar impermissibly high.

The judicially-developed standard for the award of attorneys' fees to prevailing civil rights plaintiffs effectuates Congress's intent that Title VII be vigorously enforced by private parties, effectively making each plaintiff a "private attorney general." *See Sheppard v. Riverview Nursing Center, Inc.*, 88 F.3d 1332, 1346-47 (4th Cir. 1996) ("[A] grant of attorney's fees reflects Congress's decision that a plaintiff in an employment discrimination case acts not only to vindicate her own interests, but the interests of society as a whole by acting as a 'private attorney general.'") (citation omitted); *Lee v. American Eagle Airlines, Inc.*, 93 F. Supp. 2d 1322, 1329 (S.D. Fla. 2000) ("This presumption in favor of awarding attorney's fees is a reflection of Congress' clear intent to cast the Title VII plaintiff in the role of a private attorney general, vindicating a policy of the highest priority.") (internal quotation marks and citation omitted).

In the absence of a liberal, fee-shifting provision, many meritorious civil rights claims would not be pressed, due to financial constraints. The generous standard by which a prevailing civil rights plaintiff may recoup his or her attorneys' fees serves to remove the financial barriers to vigorous enforcement of the civil rights statutes, as Congress intended.

> Attorney's fees in Title VII litigation are not limited to a proportion of the monetary damages assessed in the case because, as Congress has recognized, a plaintiff in any civil rights suit acts "not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest importance." A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress . . . . Congress recognized that private-sector fee arrangements were inadequate to ensure vigorous enforcement of civil rights. In order to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances, Congress determined that it would be necessary to compensate lawyers for all time reasonably expended on a case.

*Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 873 n.13 (7th Cir. 1995) (citations omitted). Thus, the right to recover attorneys' fees, pursuant to the standard set forth in the case law interpreting 42

U.S.C. 2000e-5(k), is central to the implementation of Title VII's remedial and deterrent purposes.

The high bar contained in defendant's arbitration rules does not serve to foster Title VII's remedial and deterrent purposes, because it effectively reinstates financial barriers to vigorous enforcement of federal civil rights statutes. If employers desire to compel employees to arbitrate civil rights claims, they cannot erect barriers which deter effective enforcement of those statutory rights. The Sixth Circuit recently addressed the issue as follows:

> The arbitration of statutory claims must be accessible to potential litigants as well as adequate to protect the rights in question so that arbitration, like the judicial resolution of disputes, will "further broader social purposes." *Gilmer*, 500 U.S. at 28, 111 S. Ct. at 1653. To put the matter in a slightly different way, employers should not be permitted to draft arbitration agreements that deter a substantial number of potential litigants from seeking any forum for the vindication of their rights. To allow this would fatally undermine the federal anti-discrimination statutes, as it would enable employers to evade the requirements of federal law altogether.

*Morrison*, 317 F.3d at 658.

The next issue that must be addressed is whether the offending attorneys' fees provision renders the entire arbitration agreement unenforceable, or whether that portion of the rules may be severed.

> Faced with arbitration agreements proscribing statutorily available remedies, courts have either severed the illegal provision and ordered arbitration, or held the entire agreement unenforceable. *Compare Herrington v. Union Planters Bank, N.A.*, 113 F. Supp. 2d 1026 (S.D. Miss. 2000) (severing an unlawful provision prohibiting award of punitive damages), *with Graham Oil Co. v. ARCO Products Co.*, 43 F.3d 1244, 1249 (9th Cir. 1994) (voiding the entire arbitration clause). Courts finding severance appropriate rely on a severance provision in the arbitration agreement, or the general federal policy in favor of enforcing arbitration agreements. *See, e.g., Etokie v. Carmax Auto Superstores*, 133 F. Supp. 2d 390 (D. Md. 2000) (relying on policy favoring arbitration agreements); *see also Herrington*, 113 F. Supp. 2d at 1032-33 (relying on policy favoring arbitration agreements).

> [T]his court has previously rejected the contention that the policy favoring arbitration agreements requires that courts sever unlawful provisions, rather than void the

agreement. *See Paladino,* 134 F.3d at 1058. In *Paladino,* the arbitration agreement expressly required arbitration of the plaintiff's Title VII claims, but limited the remedies available through arbitration. *See id.* at 1061-62. This court recognized that federal statutory claims are arbitrable only when arbitration can serve the same remedial and deterrent functions as litigation, and an agreement that limits the remedies available cannot adequately serve those functions. *See id.* (citing *Gilmer,* 500 U.S. at 28, 111 S. Ct. 1647). If the arbitration agreement limits remedies Congress determined were appropriate, it should not be enforced. *See id.* (citations omitted).

*Perez v. Globe Airport Security Services, Inc.,* 253 F.3d 1280, 1286 (11th Cir. 2001), *vacated per stipulation,* 294 F.3d 1275 (11th Cir. 2002).

The Rules of Arbitration at issue in this action do not contain a severability clause. When assessing whether an arbitration agreement containing a provision limiting the remedies and rights provided by the federal civil rights statutes should be severed, or whether the entire agreement should be voided, the Eleventh Circuit stated that an employer's "attempt to defeat the remedial purpose of Title VII taints the entire agreement, making it unenforceable." *Id.* at 1287. The *Perez* court further observed that, "[t]o sever the costs and fees provision and force the employee to arbitrate a Title VII claim despite the employer's attempt to limit the remedies available would reward the employer for its actions and fail to deter similar conduct by others." *Id.* Even though the *Perez* opinion was later vacated by stipulation, this court agrees with its analysis. Accordingly, defendant's arbitration agreement is unenforceable in whole, and due to be voided.

## II. CONCLUSION

In accordance with the foregoing, defendant's "Motion to Dismiss, or in the Alternative, to Stay This Action & to Compel Arbitration" is due to be denied. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this __26th__ day of February, 2003.

United States District Judge